United States District Court
Southern District of Texas

**ENTERED**
July 01, 2016
David J. Bradley, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| PHYLLIS PRICE, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-14-3441 |
| | § | |
| UNITED STATES DEP'T OF EDUCATION, | § | |
| *Defendant*. | § | |

**MEMORANDUM AND RECOMMENDATION**

Phyllis Price brings this action under the Administrative Procedure Act (APA) challenging the refusal of the Department of Education to discharge her student loan debt. Price claims that she was entitled to discharge under 20 U.S.C. § 1087(c) because the school falsely certified her eligibility for the loan.

A hearing on the parties' cross-motions for summary judgment was held on January 5, 2016, and supplemental briefing has been filed. Because the record amply demonstrates that the agency decision was arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law, Price's motion (Dkt. 17) should be granted and the defendant's motion (Dkt. 18) should be denied.

**Background**[1]

Price attended a Houston branch of the University of Phoenix between 2002 and 2005. At the time of her enrollment she was 52 years old and working for a company called Technip as a contract administrator. Responding to a University of Phoenix advertisement, she attended a meeting at a local hotel where counselors discussed requirements for admission. Persuaded to apply, she went in person to the University office on the Katy Freeway, where she met with a counselor to go over

---

[1]     Unless otherwise noted, the facts recited here are uncontroverted. As will be discussed later, however, not all such facts are found in the administrative record filed with the court. Dkt. 13.

the admission application in detail. Price explained to the counselor that she did not graduate from high school, although she had taken continuing education classes through George Washington University and had received a Certificate in Government Contracting. The counselor nevertheless instructed her to state on the application that she had actually finished school and to fill in the year she "should have graduated." The counselor further explained that, once the University verified that Price had not graduated, it would advise whether remedial classes would be necessary before beginning class work. Price filled out the forms as she was told.[2]

Price graduated from the University in 2005. She continued to work for Technip, but was never promoted to a higher position. She also applied for higher level jobs with other companies, but again was unsuccessful. Last year, she made a lateral move to a different company doing substantially the same job she had done before enrolling at the University. She is now 66 years old.[3]

To pay for her classes, Price obtained a series of government-backed FFELP[4] student loans. In June 2006, Price consolidated these into a single loan totaling $36,868.00 at 5.3% interest and used the proceeds to pay off the previous loans. Her first payment on the consolidated loan was due in August 2006. The Department acquired the loan in February 2007. Price has made no payments on the consolidated loan to date. The Department declared the loan in default in October 2007.

Price began seeking discharge of the loan in March 2008 by filing a "False Certification (Ability to Benefit) Loan Discharge Application." Her application was initially denied by the Department's loan servicer, American Student Assistance (ASA). ASA instructed Price to submit

---

[2]     Dkt. 27-1 at 1-2.

[3]     *Id*. at 2.

[4]     The Federal Family Education Loan Program (FFELP), formerly the Guaranteed Student Loan (GSL) Program, is authorized under Title IV, Part B of the Higher Education Act of 1965, as amended.

evidence of her failure to obtain a high school diploma. In May 2008, Price submitted a copy of her

high school transcript and requested a hearing. On June 24, 2009, the Department affirmed the initial

decision denying her discharge application. Collection efforts intensified thereafter, with Price

persistently objecting to all such efforts and writing letters of protest to all agencies concerned. On

March 28, 2014, the Department issued its final agency decision denying Price's false certification

discharge application. On October 1, 2014, the Department issued a ruling that Price's wages were

subject to wage garnishment withholding.[5] Price filed this action on December 1, 2014.

**Standard of Review**

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving

party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary

judgment has the initial burden to prove there are no genuine issues of material fact for trial.

*Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a

material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving

party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution

could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission*

*Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

The APA governs court review of agency action. 5 U.S.C. § 706(2). The court may set aside

agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

with the law." *Id.* at § 706(2)(A). Judicial review of agency action alleged to be arbitrary and

capricious is narrow, and the court is not to substitute its judgment for that of the agency. *Weisbrod*

---

[5]    The Department garnished $1,799.44 from Price's wages pursuant to the garnishment ruling, but has since
agreed to cease and desist further garnishment until completion of this case.

*v. Sullivan*, 875 F.2d 526, 527 (5th Cir. 1989). Nevertheless, the agency must articulate a satisfactory explanation for its action, including a "rational connection between the facts found and the choice made." *Burlington Truck Lines v. United States,* 371 U.S. 156, 168 (1962). In reviewing that explanation, the court must consider "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp. Inc. v. Arkansas-Best Freight Sys.,* 419 U.S. 281, 285 (1974). As the Supreme Court explained:

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

An agency decision stands or falls on the same basis articulated by the agency itself in its order. Post hoc rationalizations submitted to a reviewing court are not acceptable. *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947). Finally, an agency's construction of a statute it administers is "not in accordance with the law" if it is contrary to the unambiguous language of the statute, or is not a permissible construction of the statute. *Chevron, U.S.A., Inc. v. Natural Res. Def. Counsel, Inc.*, 467 U.S. 837, 842–43 (1984).

## Analysis

### A.    Statutory and Regulatory Background

Under the FFELP, private lenders make loans for "eligible borrowers" to attend post-secondary institutions of higher education. *See* 20 U.S.C. § 1071 *et seq.* The loans are insured by state and private guaranty agencies and reinsured by the Department of Education. Generally, eligible borrowers are those who have a high school diploma or a GED. However, a "student who does not

have a certificate of graduation from a school providing secondary education, or the recognized equivalent of such certificate," may qualify for a loan if the school certifies that she has the ability to benefit from the education it provides. *Id*. at 20 U.S.C. § 1091(d).

At the time Price applied for her loan, § 1091(d) provided three ways to satisfy the "ability to benefit" (ATB) requirement: (1) passing an independently administered ATB test approved by the Secretary of Education; (2) satisfying a state-prescribed process for determining ATB; or (3) completing a secondary school education in a home-school setting approved under state law. Only the first option (passing the ATB test) would have been available to Price because it is undisputed that Texas has no prescribed process for determining ATB, and Price was not home-schooled. Dkt. 27 at 1.

Congress amended the law in 1992, spurred by public concern over unscrupulous schools exploiting student borrowers who received no benefit from expensive classes of little use. *See Jordan v. Sec'y of Educ.,* 194 F.3d 169, 170 (D.C. Cir. 1999); *see also* H.R. Rep. 102-447, *10, 1992 U.S.C.C.A.N. 334, 343. Congress provided that if a "student's eligibility to borrow under this part was falsely certified by the eligible institution . . . then the Secretary shall discharge the borrower's liability on the loan. . . ." 20 U.S.C. § 1087(c)(1).

Under 34 C.F.R. § 682.402(e), a student's eligibility to borrow is falsely certified by the school if the borrowing student did not meet the statutory eligibility conditions, including a high school diploma and ATB requirements. To apply for discharge on this basis, the borrower must submit a written request and sworn statement, and the factual assertions in the statement must be true. 34 C.F.R. § 685.215(c). The Secretary may also require the borrower to "provide upon request

. . . other documentation *reasonably available to the borrower*, that demonstrates" the student is qualified for discharge. 34 C.F.R. § 682.402(e)(3)(vi) (emphasis added).

In addition to the regulations, the Secretary has issued informal guidance (referred to as "Dear Colleague" letters) on the procedures to be used when reviewing discharge applications. Dkt. 23-1; *see generally Gill v. Paige,* 226 F. Supp. 2d 366, 369 n.4 (E.D.N.Y. 2002). One such letter, GEN 95-42, advises that the absence of an audit finding by an oversight agency that a school has violated ATB certification policies "raises an inference" that none were taking place. At that point, "it becomes the responsibility of the borrower making the claim to provide persuasive evidence that would corroborate" her allegation. Examples of such corroborating evidence include "statements or admissions by school officials with knowledge of the school's practices, or statements made by other students who attended the school that are both sufficiently detailed and consistent with each other to appear reliable. Those statements can include statements made in other claims for discharge relief." Dkt. 23-1 at 4.

## B.    The Agency Decision

Price's application for discharge attests that she did not have a high school diploma and was not given an ATB test. Dkt. 13 at 50. In response to an ASA request dated May 14, 2008, she verified her lack of a high school diploma by providing a copy of her high school transcript prominently stamped "DID NOT GRADUATE." Dkt. 13 at 43. This document was in the administrative record, and its authenticity was not disputed. Only one issue remained for the agency to decide—whether Price had taken and passed an ATB test.[6] If no ATB test was given to her, then

---

[6]    *See* 20 U.S.C. § 1091(d)(1)(A)(i) ("The student shall take an independently administered examination ... demonstrating that *such student* can benefit from the education or training being offered.") (emphasis added). It is undisputed that the other ATB alternatives under § 1091(d)(2) (a state-approved process) or § 1091(d)(3)

the school falsely certified her eligibility for the loan, and she would be entitled to discharge under

20 U.S.C. § 1087(c)(1).

Price swore under penalty of perjury that she was not given an ATB test. No evidence to

contradict that claim was ever produced—no test, record of such a test, or statement by anyone with

knowledge that such a test was given to Price. Nevertheless, the agency denied Price's request for

discharge on the following grounds:

> This office has reviewed information from entities responsible for overseeing the school's compliance with ability-to-benefit regulations, and has found *no corroborating evidence of ability to benefit violations at the school during your time of enrollment, such as program deficiencies, which would have come to light during reviews and audits of the school.* Not having a high school diploma or GED at the time of enrollment does not, by itself, qualify you for discharge.
>
> Schools are required only to certify that student borrowers have sufficient ability to benefit from the training offered. Employment in the field of study, however, is not guaranteed, and the student's inability to find employment in the field of study may not be used as a condition of repayment.

Dkt. 13-2 at 2 (emphasis added). This decision cannot withstand scrutiny even under the very lenient

standards of APA review.

### 1.      Relevant facts not considered

As noted, the key fact—indeed the only fact— necessary to decide Price's claim was whether

she had taken and passed the University's ATB test. Yet the agency studiously avoided that issue,

never bothering to request the test records from the one place most likely to have them—the school

---

(home-schooling) were not applicable in Price's case.

itself.[7] This was not an oversight. For reasons left unexplained, it is Department policy *not* to ask

the school for specific proof of ATB testing in student loan discharge cases.[8]

Rather than seek evidence from Price's loan file at the school, the agency focused exclusively

on evidence "from entities responsible for overseeing the school's compliance with ability-to-benefit

regulations"—that is, program reviews and audits designed to uncover widespread or systemic ATB

violations. According to the Department of Education's Program Review Guide, such reviews

typically include only "a small subset" of 15 to 29 student records from the school. *See* Dkt. 25-1

at 41. Given that the University of Phoenix has many thousands of students at several hundred

locations around the country, the odds were vanishingly small that Price's student loan file would

be among those subject to audit review, and the Department does not assert that it was.

The Department argues that it is proper to infer from the lack of systemic ATB violations at

a school that no such violation occurred in a particular student's case. While such an inference might

be possible, it is fairly weak; one need not be a career criminal to be guilty of an individual crime.

But even a weak inference is unsupportable on this record because the audit reviews actually did

contain anecdotal evidence of ATB compliance problems at the University.

For example, there is a detailed, signed statement from one student alleging that the school

instructed him to falsify his application by making up a date he "would have" graduated from high

school (Dkt. 13 at 55). Similarly, another page refers to various claimed ATB violations, including

an alleged "fraud ring" in which straw students enrolled and falsely claimed to have high school

---

[7]     Following the January 2016 hearing on this motion, a Department loan analyst finally contacted the school and
obtained those files, which are attached as Exhibit A to Dkt. 23-4. The file contains no evidence that an ATB
test was given to Price.

[8]     See Dkt. 23-4 at 2 (declaration of Christian Lee Odom).

diplomas; allegations by another student that the school told him to put down false information about graduating high school; and an observation that the school "tends" to allow students to "self-certify" that they are high school graduates. Dkt. 13 at 53. Still another page notes that the school was "reluctant" to provide records on student borrowers to the oversight agency. *Id.* at 54. Finally, two pages of the audit reports refer to unspecified "Significant Deficiencies" (*Id.* at 125–26). While this evidence might have been insufficient to warrant a finding of systemic ATB violations, it does provide some corroboration for Price's claim.

In sum, the decision-making process here amounted to a cursory glance at the forest, with no attempt to spot the only tree that mattered. By ignoring record evidence, the Department "offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. By not seeking the most relevant evidence (Price's ATB test) from the most logical source (University files), the Department "entirely failed to consider an important aspect of the problem." *Id.* Such an upside-down process easily qualifies as arbitrary and capricious.

### 2.    Dear Colleague guidance policy not followed

The Department defends its decision by claiming that it was merely following its informal "Dear Colleague" guidance policy.[9] The record does not support this claim.

The Dear Colleague guidance states that the absence of an audit finding of improper ATB certification practices "raises an inference" that none were taking place. But the guidance does not authorize the agency to stop there. In the absence of systemic audit violations, the guidance explains that it then "becomes the responsibility of the borrower making the claim to produce persuasive

---

[9]     The validity of the regulatory guidance is not at issue here. *Compare Gill v. Paige,* 226 F. Supp. 2d 366, 370–75 (E.D.N.Y. 2002).

evidence that would corroborate his or her allegation of improper ATB determination." Dkt. 23-1 at 4. In other words, the burden shifts back to the borrower to provide persuasive corroboration of her claim. *See Gill,* 226 F. Supp. 2d at 374 ("The Dear Colleague policy simply states a regular circumstance in which the Secretary will exercise [her] authority to request additional information in order to be satisfied as to the borrower's entitlement to a discharge."). The policy does not authorize the agency to shut down its inquiry upon merely verifying that no systemic ATB violations had been uncovered by an audit.

Yet that is exactly what the Department did. Price was never advised that it was now her burden to produce "persuasive evidence" that would corroborate her claim of no ATB testing.[10] Had she been given that opportunity, however, it would have been easy for her to comply, provided she had been given access to the administrative record compiled by the agency itself. There she would have found the signed and detailed letter from William Hazelton, a University of Phoenix student seeking discharge of his student loan under circumstances nearly identical to Price's. After Hazelton advised the school that he did not have a high school diploma or GED, a University of Phoenix employee told him to "just put down the date [he] would have graduated." Dkt. 13 at 55.

This is precisely the type of corroborative evidence described in the Dear Colleague policy guidance:

> [S]upporting evidence can include . . . statements made by other students who attended the school that are both sufficiently detailed and consistent with each other to appear reliable. Those statements can include statements made in other claims for discharge relief.

---

[10]   The only request for additional information Price ever received was for "proof to substantiate [her] claim of not having a high school diploma or GED." Dkt. 13 at 32. It is undisputed that she promptly complied with this request in 2008, six years before the final agency decision. *Id.* at 43.

Dkt. 23-1 at 4.

By restricting its inquiry to systemic audit deficiencies and failing to consider corroborating evidence in the form of statements by other students seeking debt relief, the Department violated the express directive of its own informal policy guidance. *See McGuire v. Duncan,* 138 F. Supp. 3d 1076, 1085–86 (E.D. Mo. 2015) (Department violated its own regulations by requiring student to "submit corroborating evidence absent the Department's request").

### 3. Requiring proof of other violations as a condition of discharge is contrary to law

The Department's truncated decision-making process also violates the discharge statute and its implementing regulations. Congress has mandated that the Secretary "shall discharge" the borrower's liability on the loan " if *such student's* eligibility to borrow was falsely certified." 20 U.S.C. § 1087(c)(1) (emphasis added). The loan eligibility conditions are specified in § 1091(d), and again those conditions are personal to each borrower. Nothing in the statute suggests that the school must commit a specified number of other ATB violations before an individual borrower can qualify for discharge. Nor do the implementing regulations impose such a condition.

Here, however, the agency decision effectively required Price to prove the school had falsely certified *other* students on a *systemic* basis. This element of proof unlawfully imposes a new and onerous burden on student borrowers otherwise entitled to relief under § 1087(c). Such a requirement also violates the existing regulation which allows the Secretary to request the borrower provide "other documentation *reasonably available to the borrower,* that demonstrates" the student is qualified for discharge. 34 C.F.R. § 682.402(e)(3)(vi). Audit reports, program reviews, and other

student loan files are not reasonably available to an individual borrower such as Price, who has no means to compel their production.

For these reasons, the agency's decision-making process in this case constituted an abuse of discretion and was not in accordance with law.

## C.      Post Hoc Rationalizations

Judicial review of agency action is confined to the agency's stated rationale—after-the-fact rationalizations are not properly considered. *Chenery Corp.,* 332 U.S. at 196.  Nevertheless, after the motion hearing in January 2016, the Department for the first time "contacted the University of Phoenix and requested financial aid information and admissions documentation for Phyllis M. Price." Dkt. 23-4 at 2. As a result, the Department in a supplemental filing now asserts additional justifications for its decision. Dkt. 23. Even if such hindsight justifications were permissible under *Chenery* (and they are not), they are not persuasive in the least.

First, the Department notes that Price completed her course of study and graduated from the University in 2005. This is both entirely true and entirely irrelevant: graduation does not disqualify a student from seeking discharge for false certification under 20 U.S.C. § 1087(c). The implicit policy argument—that Price should not be permitted the windfall of benefitting from a degree without paying for it— rests on the fallacious assumption that Price has benefitted in any way from her degree. Price is doing essentially the same job as before she enrolled, and any psychic benefit from achieving a degree is more than offset by eight years of fending off debt collectors. In any event, Congress did not see fit to condition student loan relief upon a showing that the student ultimately failed to graduate. *Cf. Jordan*, 194 F.3d at 172 (rejecting similar argument).

The Department next asserts that the school permitted students such as Price to "self-certify" their secondary education on the admissions application, and "no verification or authentication action would occur unless there was due cause for the University to research further." Dkt.23-4, att. A. There are several flaws in this argument. First, whatever the school's admission policies might be, FFELP student loan qualifications are fixed by statute, and the statute is clear. In order to be eligible for assistance, any student "who does not have a certificate of graduation from a school providing secondary education, or the recognized equivalent of such certificate" must satisfy the ATB requirements. 20 U.S.C. § 1091(d).  Nothing in the statute or regulations permits students lacking such a certificate to "self-certify" their secondary education and thereby avoid the ATB test requirement; nor are institutions authorized to rely upon such unsupported statements when certifying a student's loan eligibility under § 1087(c)(1). Second, the Department implies that the University actually relied on Price's fictitious graduation date, thereby excusing its failure to give her an ATB test. In fact, the University could not possibly have relied on this statement because Price disclosed the truth to the admissions officer, who then advised her to falsify the admissions application. Finally, even if the facts were otherwise, it must again be stressed that the final agency decision did not even mention, much less rely upon, this "self-certification" rationale.

**Conclusion and Recommendation**

Price was falsely certified as eligible for a student loan because she did not have a high school diploma (or its equivalent) and was not required to pass an ATB test before enrollment.

Price's motion for summary judgment should be granted, and the Department's motion denied, because the Department's denial of Price's request for student loan discharge was arbitrary, capricious, an abuse of discretion, and not otherwise in accordance with law. Judgment should be

13

rendered for Price fully discharging her from Federal Consolidation Loan Debt. No. 17749770 and ordering a refund of the $1,799.44 garnished from her wages in partial payment of that debt.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. FED. R. CIV. P. 72.

Signed at Houston, Texas, on July 1, 2016.


_____
Stephen Wm Smith
United States Magistrate Judge